COLEMAN, Justice,
for the Court:
¶ 1. Tyrone Burrell was indicted for kidnapping. Burrell maintained that he merely tricked an elderly man into driving him to Memphis, but the jury found him guilty of kidnapping. The trial court sentenced Burrell to thirty years without parole. Burrell appeals.
Factual Background and Procedural History
¶2. On the morning of November 5, 2012, Charles and Fredna Jeter left their home in Horn Lake and headed to Bally’s Casino in Tunica. Fredna drove, as Charlie had stopped driving several years earlier after a stroke and a heart attack. Inside Bally’s, Fredna played the slot machines at the front of the casino, and Charlie played machines in the back.
¶ 3. Tyrone Burrell approached Charlie and struck up a conversation. Burrell saw that Charlie smoked Pall Mall cigarettes and told Charlie that he could sell him Pall Malls for $1 per carton. Charlie testified that he thought Burrell’s proposal made for a great deal, and he gave Burrell $20 for the cigarettes. Burrell said the cigarettes were in his car, so Charlie followed him to the parking lot. Charlie got his own car keys from Fredna on the way out. Charlie testified that Burrell said he was parked-near Charlie and, when they got to Charlie’s car, Burrell pulled out a gun and demanded that Charlie drive him to Memphis. Charlie testified that they did not make any stops along the way. When they got to Burrell’s neighborhood, Burrell *21 demanded more money and Charlie gave him $65 that he had in his pocket. Burrell then told Charlie to “take off.” Charlie went straight back to the casino. He had been gone for about two hours and, by the time he returned, his wife had notified the police.
¶ 4. Burrell claims that he just needed a ride home to Memphis. He testified that he merely conned Charlie to get a-ride; he did hot intend to rob him or kidnap him. Burrell testified that he did not have a gun and that he got only $40 from Charlie. Burrell admitted that he got Charlie to the parking lot by telling him he could get him a carton of cigarettes for $1. Burrell testified that, once they were in the parking lot, he told Charlie they needed to go down the road to Exxon to get the cigarettes. Burrell testified that Charlie let him in the car and willingly drove him to Exxon. According to Burrell, they stopped at the Exxon, but Burrell came back to the car and told Charlie that they needed to go to Memphis to get the cigarettes. Burrell said that when they got to Memphis, they stopped at a barbecue restaurant and Bur-rell went inside, again under the guise of checking on the cigarettes. Burrell then had Charlie drive him a few more blocks to his neighborhood. Burrell claims that he told Charlie to meet him back at the barbecue place, but he had no intention of returning and he does not know where Charlie went after that.
¶ 5. Security personnel from Bally’s Casino pulled the surveillance footage and saw Charlie and Burrell walk out of the casino and get into Charlie’s car. Several security officers and officers from the Tu-nica County Sheriffs Department testified that a gun was not visible in the surveillance footage, but they all testified that a gun would not be visible from that distance. The -, officers also testified that Charlie was shaken up when he returned; they said he was disheveled, worried, and nervous.' Fredna testified that Charlie was shaking so badly that he could not get his driver’s license out of his wallet. DNA was taken from Charlie’s car, and swabs from the passenger side matched Burrell. Burrell did not deny being' in the car.
¶ 6. Burrell was charged with kidnapping under Mississippi Code Section 97-3-53. Because Charlie was more than sixty-five years old, the charge was enhanced under Section 99-19-351. The firearm enhancement from Section 97-37-37 was included because Burrell allegedly had used a gun. Finally, Burrell was indicted as a habitual offender under Section 99-19-83. At trial, the jury heard testimony from several officers from the Tunica County Sheriffs ’ Department, security personnel from Bally’s Casino, analysts from the Mississippi Crime Laboratory, Fredna Jet-er, Charlie Jeter, and Tyrone Burrell. The jury found Burrell guilty of kidnapping. The judge sentenced him to thirty years without parole. Burrell filed a motion for judgment notwithstanding the verdict (JNOV) or for a new trial, which the trial court denied. Burrell appeals.
Discussion
¶ 7. Counsel for Burrell filed a brief on his behalf asserting two issues; Burrell then filed two pro se supplemental briefs raising two additional issues. The assignments of error at issue are:
I. Whether the trial court abused its discretion with its method of selecting alternate jurors.
II. Whether the trial court erred in • denying Burrell’s motion for a new trial.
III. Whether the verdict is contrary to the law and evidence.[1]
*22 IV. Whether Burrell’s sentence is contrary to the law and evidence.
The issues have been restated and reorganized for the purpose of discussion.
I. Whether the trial court’s method of . selecting alternate jurors amounted to an abuse of discretion.
¶ 8. Burrell asserts that Judge Webster abused his discretion by ignoring the rules for selecting alternate jurors and, instead, drawing their names out of a paper'cup.[2] We hold that Burrell waived his claim about the judge’s method of selecting alternate jurors because he did not lodge a timely objection.
¶ 9. At,the beginning of voir dire, Judge Webster explained that fourteen jurors would be selected. Rather than selecting twelve jurors and then two alternates, all fourteen would be selected at one time. He gave each attorney seven peremptory challenges; rather than allowing six challenges for the regular jurors followed by an additional one for alternates, he gave them seven without distinction between the regular and alternate jurors. Judge Webster explained that, at the end of the trial, he would pull two names out of a hat to determine who the alternates would be. Judge Webster commented that he “liked doing it that way.” The attorneys did not object when he announced the method. After voir dire, fourteen jurors were selected; alternates were not designated.
¶ 10. At the end of the trial, Judge Webster put all of the jurors’ names into a paper cup. The deputy clerk drew out two names, and Judge Webster designated the individuals as the alternate jurors. Bur-rell’s attorney objected to the judge’s method at that point, citing Rule 4.05.[3] He acknowledged that Judge Webster usually employed the method, but he wanted to make his objection for the. record. Judge Webster ■ overruled the objection, saying he found the rules regarding-jury selection to be “directory only, not mandatory.” At that point, the jury- retired to deliberate, and Judge Webster told the newly designated alternates they could leave.
If 11. When Judge Webster announced his intention to select the jury in his usual manner, neither side objected. Burrell’s attorney did not object until after trial, when Judge Webster said he would draw names from a cup to decide who the alternates would be. Burrell waived the claim by not objecting at the beginning of voir dire when the judge could have changed his proposed method. Vaughn v. State, 712 So.2d 721, 725 (¶ 15) (Miss.1998) (citing Myers v. State, 565 So.2d 554, 557 (Miss.1990)) (“a party who fails to object to the jury’s composition before it is empaneled waives any right to complain thereafter”).
II. Whether the verdict is contrary , to the law and evidence and whether the trial court erred in denying Bur-rell’s motion for a new trial.
¶ 12. “[A] motion for a new trial challenges the weight of the evidence.” *23 Jones v. State, 154 So.3d 872, 880 (¶ 24) (Miss.2014) (citing Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)). “When reviewing a challenge to the weight of the evidence, the Court will disturb a jury verdict only ‘when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’” Jones, 154 So.3d at 880 (¶ 24) (quoting Bush, 895 So.2d at 844 (¶ 18)). Burrell was charged with kidnapping under Mississippi Code Section 97-3-53, which provides:
Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other, person with intent to cause such person to be confined or imprisoned against his or her will, or without lawful authority shall forcibly seize, inveigle or kidnap any vulnerable person as defined in Section 43-47-5 or any child under the- age of sixteen (16) years against the will of the parents or guardian or person having the • lawful custody of the child, upon conviction, shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at. imprisonment for life, the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the custody of the Department of Corrections.
Miss.Code Ann. § 97-3-53 (Rev.2014) (emphasis added). Kidnapping can be proven in three ways. To be convicted of kidnapping, the State must prove that the defendant:
1. ■ acting without lawful authority, and
. 2. . with or without intent to secretly confine, .
a. forcibly seized and confined another person; or
b. inveigled or kidnapped another person with intent to cause such person to be confined or imprisoned against his will; or
c. forcibly seized, inveigled or kidnapped any vulnerable person as defined in Section 43-47-5 or any child under the age of sixteen (16) years against the will of the parents or guardian or person having the lawful custody of the child.
See Miss.Code Ann. § 97-3-53 (Rev.2014).[4] In the instant case, the indictment invoked the first method, charging that Burrell did “without authority of law, and with or without intent to secretly confine, forcibly seize and confine Charlie Jeter.” We hold that the evidence .was sufficient for the jury to find that Burrell forcibly seized and confined Charlie. ■
¶ 13. Burrell does not deny that he was in Charlie’s car or that he conned Charlie into driving-him to Memphis.’ He simply argues that, while the evidence was sufficient to prove that he tricked Charlie, it was not sufficient to prove kidnapping by force, for which’ he stood indicted. Burrell claims there is no evidence that he had a gun. He also claims that Charlie’s testimony was unreliable because he could not recall key facts and details, and he was not able to identify Burrell in a' photo lineup. Burrell’s claim that he may be guilty of trickery, but not kidnapping, is entirely without merit; Intent to kidnap is not required. “[Kjidnaping is not a specific intent crime. Therefore, it is sufficient *24 that the surrounding circumstances resulted in a way to effectively become a kidnap-ing as opposed to the actual intent to kidnap.” Milano v. State, 790 So.2d 179, 187 (¶ 32) (Miss.2001) (quoting Williams v. State, 445 So.2d 798, 809 (Miss.1984)). Burrell did not need to have intended to kidnap Charlie.
¶ 14. It is undisputed that Burrell told Charlie he could get cigarettes for $1 a carton and enticed Charlie to the parking lot to procure the cigarettes. Surveillance footage showed Burrell and Charlie walking through the casino together. At one point Charlie got his wallet out and. appeared to be looking for cash. They stopped at a machine where, according to Burrell, Charlie cashed in his tickets. They stopped again, apparently to get the keys from Fredna, although she was not visible on the video. Then they walked out of the casino and into the parking lot together. A gun was not visible in the surveillance footage, but the security personnel and officers who testified said a gun would not be visible from that distance.[5] Thus, the fact that a gun is not visible in the footage is not proof that there was no gun. Burrell claimed that Charlie had let him into the car willingly under the premise of driving to the Exxon to get the cigarettes. Charlie, however, testified that Burrell had ordered him into the car at gunpoint. Charlie and Burrell both testified that Charlie had dropped off Burrell at his neighborhood. Charlie drove straight back to the casino, where his wife had involved the police because Charlie had been gone for two hours. Fredna and several others testified that Charlie was visibly shaken up when he returned.
¶ 15. “The jury determines the weight and credibility of witness testimony.” Jones, 154 So.3d at 880 (¶ 24) (quoting Nelson v. State, 10 So.3d 898, 905 (¶ 29) (Miss.2009)). The jury was responsible for determining whether Charlie or Burrell was more believable. If the jury believed Charlie, then the testimony and circumstantial evidence were sufficient to prove that Burrell “forcibly seized and confined” Charlie. According to Charlie, Burrell enticed him to the parking lot with his cigarette con, forced him into the car at gunpoint, confined him in the car, and forced him to drive to Memphis. The surveillance footage and other testimony support Charlie’s account. “[Cjircumstan-tial evidence is sufficient to sustain a charge of kidnaping.” Milano v. State, 790 So.2d 179, 187 (¶ 32) (Miss.2001) (citing Underwood v. State, 708 So.2d 18, 35 (Miss.1998)). Viewing the evidence in the light most favorable to the verdict, the verdict is not “so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Jones, 154 So.3d at 880 (¶ 24). The issue is without merit.
III. Whether Burrell’s sentence is contrary to the law and evidence.
¶ 16. Lastly, in Burrell’s second pro se supplemental brief, he asserts that his sentence is contrary to the law and evidence. As set forth above, the kidnapping conviction was not contrary to the evidence. As to the sentence, the trial court sentenced Burrell to thirty years without parole. Burrell could have gotten life in prison, so thirty years was certainly within the term allowed by law.
¶ 17. Burrell’s claim pertains to the habitual-offender portion of his indict *25 ment-and sentence. He asserts that the documentation of his prior convictions was allowed into evidence “without the testimony of the person who actually performed the examination and certification of the record” in violation of the “intervening decision” of Bullcoming v. New Mexico, 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). First, Bullcoming is not an intervening decision. Second, Bullcoming does not apply to records of prior convictions.
¶ 18. At the sentencing hearing, the State introduced records of Burrell’s prior convictions through James Clark, a detective with the Tunica County Sheriffs Office. Defense counsel objected, asserting hearsay and that the records had not been properly authenticated, , The trial court overruled the objection, noting that the Certificate of Authenticity attached to the records resolved the hearsay issue. Judge Webster held that Burrell’s numerous pri- or convictions had been proven and that he was required to impose the maximum sentence under Mississippi Code Section 99-19-81. The indictment actually referred to Mississippi Code Section 99-19-83, under which a life sentence could have been imposed. At the sentencing hearing,- the State indicated that it would proceed under Section 99-19-81 instead.
¶ 19. The Court of Appeals has held repeatedly that self-authenticating records of a defendant’s prior convictions are not testimonial and that Bullcoming does not apply. See Sykes v. State, 148 So.3d 677, 679 (¶¶ 7-9) (Miss.Ct.App.2014); Small v. State, 141 So.3d 61, 68-69 (¶¶ 22-25) (Miss.Ct.App.2014); Vanwey v. State, 147 So.3d 367, 370 (¶¶ 10-11) (Miss.Ct.App.2014). In Vanwey, the Court of Appeals addressed an identical argument and provided the following:
Vanwey argues that Bullcoming v. New Mexico, 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), is an intervening Supreme Court decision, and based on its holding, the documents used to prove her prior convictions for her habitual-offender status are testimonial. Therefore, Vanwey claims, the State’s failure to introduce testimony from the witness who certified the documents deprived her of her right to confrontation and invalidated the enhanced portion of her sentence. A document is testimonial when it is created for the sole purpose of the State’s use as evidence against the defendant. Grim v. State, 102 So.3d 1073, 1078 (¶ 12) (Miss.2012). The certificate on the documents showing Van-wey’s prior crimes “indicates that the custodian of the records swore that the documents were true and correct copies, not that [Vanwey] actually committed any act.” Frazier v. State, 907 So.2d 985, 997 (¶ 42) (Miss.Ct.App.2005). We have held' that -self-authenticating records of a defendant’s prior convictions are not testimonial evidence, and do not trigger a defendant’s constitutional right to confront witnesses. Id. at 996 (¶ 36). Bullcoming does not address self-authenticating records of a defendant’s pri- or convictions. In fact, Bullcoming addresses a forensic laboratory report ■made by an analyst and used to prove a fact at a criminal trial. Clearly, the report was testimonial in nature. Bullcoming, 131 S.Ct. at 2717. The certified documents used to prove Vanwey’s prior convictions are not testimonial, and the holding in Bullcoming does not change that_
Vamvey, 147 So.3d at 370 (¶¶ 10-11). We adopt the Court of Appeals’ rationale on the issue.
¶20. Burrell was indicted for kidnapping under Mississippi Code Section 97-3-53, which carries a maximum sentence of life imprisonment. However, “if the jury fails to agree on fixing the penalty at *26 imprisonment for life, the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the custody of the Department of Corrections.” Miss.Code Ann. § 97-3-53 (Rev. 2014). Burrell’s indictment was enhanced because the victim was older than sixty-five, Burrell used a gun, and Burrell was a habitual offender. The elderly enhancement provides that “the offense may be enhanced by punishment for a term of imprisonment of up- to twice that authorized by law for the offense committed[.]” Miss,Code Ann. § 99-19-357 (Rev.2015). The firearms enhancement provides for an additional five years to be added to the sentence or an additional ten years if the defendant is a convicted felon. Miss.Code Ann. § 97-37-37 (Rev.2014).[6] Finally, as a habitual offender, Burrell could have received a life sentence without parole under Mississippi Code Section 99-19-83. Although the indictment referenced Section 99-18-83, at the sentencing hearing, .the parties and the court proceeded under Section 99-19-81, which requires the court to impose the maximum sentence available without parole-here, that was thirty years without the other enhancements.
¶ 21. Burrell could have received a life sentence ■ under the kidnapping statute. Since the State- did not seek a life sentence, the statute provided for a thirty-year sentence, which was mandatory with the habitual offender enhancement. That term could have been doubled under -the elderly enhancement and another five years could have been added under the firearms enhancement, which would have .resulted in a total of sixty-five years. Bur-rell was sentenced to thirty years without parole. “This Court has repeatedly held that the imposition of a sentence, if it is within the limits prescribed by statute, is a matter left to the sound discretion of the trial court, and that the appellate courts will not ordinarily disturb a sentence so imposed.” Hersick v. State, 904 So.2d 116, 128 (¶ 49) (Miss.2004) (quoting King v. State, 857 So.2d 702, 731 (¶ 106) (Miss.2003)). See also Green v. State, 631 So.2d 167, 176 (Miss.1994); Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992). Because Burrell’s sentence is within the statutory limits, it is not contrary to the law. The issue is without merit.
Conclusion
¶ 22. Burrell’s claim that the :trial judge erred in his method of selecting alternate jurors is procedurally barred. His claims that the verdict and sentence are contrary to the law and evidence are without merit. We affirm Burrell’s conviction and sentence.
¶ 23. CONVICTION OF KIDNAPPING AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCE SHALL NOT BE REDUCED OR SUSPENDED, NOR SHALL THE APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION. SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.
WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH'SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING, J.

. In the original appellant’s brief, Burrell’s attorney asserted that the trial court erred in *22 denying Burrell’s motion for a new trial. In Burrell’s first pro se supplemental brief, Bur-rell set forth Issue III, asserting that the verdict was contrary to the law and evidence. Although the issue has a different title, Burrell largely copied Issue II from his attorney's brief. Burrell did not set forth any additional support for the claim. Therefore, the issues are discussed together.

. Burrell’s attorney and the judge both implied that the judge's method of selecting alternate jurors was a common practice for Judge Webster. The Court located approximately seventy-five cases that have been appealed from Judge Webster’s court, and the issue has not been raised previously.

. Uniform Rule of Circuit and County Court 4,05 pertains to jury selection.

. The Court previously has set forth the elements of kidnapping, see Conley v. State, 790 So.2d 773, 794. (¶ 74) (Miss.2001) (quoting Hughes v. State, 401 So.2d 1100, 1105 (Miss. 1981)), but Section 97-3-53 has been revised since the Court's last recitation of the elements,

. The Court has reviewed the video and agrees that it would be impossible to see a gun at that distance. Burrell and Charlie can be identified by their clothing as they leave the casino, but they cannot be seen walking among the cars in the parking lot.

. Although Burrell was a convicted felon, the indictment specifically provided that the enhancement under Section 97-37-37 was for a term of five years.