# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01222-COA

**CALVIN GILES**                                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/29/2018 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/25/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McDONALD AND C. WILSON, JJ.

### McDONALD, J., FOR THE COURT:

¶1.    The Coahoma County Circuit Court found Calvin Giles guilty of fondling on January 25, 2018, and sentenced him to serve twelve years in the custody of the Mississippi Department of Corrections, with eight years to serve and four years on supervised probation. He appeals his conviction on two grounds: the erroneous admission of prior bad-acts evidence and procedural errors in the selection of his jury. After reviewing the record and relevant law, we affirm.

### FACTS

¶2.    In July 2015, fifty-six year old Calvin Giles, also known as "Rev," lived down the

street from eight-year-old "Mia"[1] and her mother, "Sandra." Giles sold candy, chips, sodas and cigarettes out of his home, and Mia had often purchased items from him. On July 18, 2015, Mia went to Giles's house with a friend of hers, "Gail," to buy some snacks. While there, Giles kissed Mia, touched her private parts, and exposed his penis to her. She told him not to do that and left. Later that evening when Sandra told Mia to take a bath, Mia told her mother what Giles had done. Sandra immediately called Mia's father "Mike" who lived nearby. When Mike arrived, Mia told him that the man down the street who sells candy had touched her between her legs on her private area and "pulled himself out" (exposed himself). Mike and Sandra went to Giles's home. Although he was there, Giles did not answer the door when they knocked and called to him.

¶3.     Sandra and Mike then called the Clarksdale Police Department. Officer Jacob Braxton responded, and Mia's parents reported that Mia had been touched inappropriately by Giles. Per department protocol, Braxton notified Investigator Nicholas Turner who met with Sandra and Mike two days later. He told them that he would schedule Mia for a forensic interview with Meredith Rawl of the Family Crisis Services Center of Northwest Mississippi in Oxford. This interview was conducted on August 12, 2015.

¶4.     Ms. Rawl, an experienced forensic interviewer,[2] testified at trial about the interview.

---

[1] To protect the identity of the minor child involved in this case, fictitious names are used for the victim and the victim's relatives.

[2] Rawl's credentials clearly established her as an expert witness. She has a degree in psychology and a graduate degree in psychopharmacology. She has had over 400 hours of training in the field of child sex abuse and forensic interviewing and over 500 hours of continuing education. She had worked at the Family Crisis Center for eight years and conducted over 500 forensic interviews.

She explained what forensic interviewing was and how she elicits information from children in a non-leading or suggestive way. She said Mia told her the following:

> She disclosed that she asked him for a quarter, and he told her to hug him and then kissed her jaw with his mouth and touched all over her body. She disclosed that his hand touched her buttocks and vaginal area on top of her clothing. She reported that she told him to stop, and he said, "Shhh." Additional[ly], she reported that on more than one occasion he showed her his penis . . . and stated that he was touching his penis when he showed it to her. She stated that the first time he showed her his penis she was seven and the last time she was eight.

Ms. Rawl had previously testified in this same way at the pre-trial Rule 803 certification hearing. At that time, the court noted that the last portion of this testimony may not be admissible and instructed the State to caution its witnesses and have them testify only to the events of the day in question. At trial, however, Rawl testified exactly as she had during the pre-trial hearing. No objection was made and her questioning continued without interruption.

¶5.     Rawl also testified that she assesses a child to determine if their actions are consistent with having been abused. Rawl said:

> A.     So during the interview, I'm assessing the child's—their age and their abilities to provide information. I'm looking for the consistency in their statements, peripheral information, sensory information, who was involved, if they're able to provide that kind of information to me during the interview, and also give me spontaneous information, clarify and correct me if needed, then my findings are consistent with that of a child who's been sexually abused.

> Q.     How often do you find that a child, through your interviewing process, has provided information consistent with that of a child that's been sexually abused?

> A.     It's actually less than 50 percent of the cases that I have.

In this case, Rawl concluded that, in her opinion, Mia exhibited signs consistent with a child

3

who was sexually abused. The defense objection to this opinion testimony was overruled.

¶6. Mia also testified at the trial, saying that on that day she had asked Giles for a quarter to buy an ice cup and Giles asked her for a hug. Giles then touched her on her "coo coo"—her vagina—and on her booty. Mia's mother and father testified as noted above. Other witnesses for the prosecution included law enforcement officers.

¶7. Giles also testified, saying that Mia had come to his house begging for candy and that when he refused, she left. He emphatically denied ever touching or kissing Mia. He also testified that Mia has come to buy things from him since this incident.

¶8. Based on this testimony, the jury convicted Giles. After trial, he filed a motion for judgment notwithstanding the verdict, objecting to Rawl's testimony that in her opinion Mia conducted herself in a manner of a person who had been sexually molested. Giles also challenged the sufficiency of the evidence. The court denied this motion.

¶9. On appeal, Giles raises only two issues. Giles argues that Rawl's testimony that Mia had reported Giles exposing himself to her on prior occasions was evidence of prior bad acts that should not have been admitted. He also challenged the method by which the judge chose alternate jurors. Giles says that both errors were prejudicial to him and denied him a fair trial.

### STANDARD OF REVIEW

¶10. "Our well-established standard of review for the trial court's admission or suppression of evidence, including expert testimony, is abuse of discretion." *Bradley v. Diamondhead Country Club & Prop. Owners Ass'n Inc.*, No. 2017-CA-01389-COA, 2019 WL 1915370,

4

at \*1 (¶6) (Miss. Ct. App. Apr. 30, 2019) (citing *Tunica County v. Matthews*, 926 So. 2d 209, 212-13 (¶5) (Miss. 2006)). "We give great deference to the discretion of the trial judge." *Id*. "Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, that decision will stand." *Id*. We review the circuit court's decisions in empaneling a jury and substituting alternate jurors for abuse of discretion. *Shannon v. State*, No. 2017-KA-01063-COA, 2019 WL 350626, at \*1 (¶7) (Miss. Ct. App. Jan. 29, 2019); *McCoy v. State*, 820 So. 2d 25, 29 (¶11) (Miss. Ct. App. 2002).

## DISCUSSION

**I.     Whether the Circuit Court abused its discretion in admitting the testimony of Giles's prior bad acts.**

¶11.    Giles points to two sentences in Rawl's testimony that he contends constitutes evidence of prior bad acts that prejudiced the jury against him. In relating what Mia had told her, Rawl included the following:

> Additional[ly], she reported that on more than one occasion he showed her his penis . . . and stated that he was touching his penis when he showed it to her. She stated that the first time he showed her his penis she was seven and the last time she was eight.

Giles points out that during the pre-trial Rule 803 certification hearing, Rawl had said the same thing that prompted the following exchange with the court:

| | |
|---|---|
| THE COURT: | Mr. Williams, during our 803 hearing, I certainly heard testimony or—yeah, I did I heard testimony that indicated that there may be allegations that similar incidents occurred at different times. Does the State anticipate going into any incidents that occurred at a time other than that alleged in the indictment? |
| MR. WILLIAMS: | At this point I do not, but, of course, can I report back to |

5

|                | the Court after lunch to—                                         |
| THE COURT:     | You can, but if you do not—if that position changes, I would like it to be known before we get into that. |
| MR. WILLIAMS:  | Yes, sir.                                                          |
| THE COURT:     | And secondly, if it does not change, I expect you to caution your witnesses about not making any reference to anything other than the date of the indictment. |
| MR. WILLIAMS:  | Yes, sir.                                                          |

Giles claims that the prosecution failed to instruct Rawl not to testify to Mia's disclosure of prior instances of exposure. But Giles failed to object to this testimony at trial and he did not raise the alleged error in his post-trial motion for JNOV. The State argues that because of this failure to object, Giles waived this issue.

¶12. Mississippi Rule of Evidence 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, evidence of other acts or crimes cannot be admitted to show that a defendant acted in conformity with his or her character. Even if admissible for some other purpose, before admitting evidence of prior bad acts, a circuit court must filter the evidence through Mississippi Rule of Evidence 403 and determine whether the evidence's probative value outweighs its prejudicial effect to the defendant. *Derouen v. State*, 994 So. 2d 748, 756 (¶20) (Miss. 2008). If a circuit court finds the probative value outweighs the prejudicial effect, the evidence may be admitted, provided the jury is given a limiting instruction

regarding the evidence in question. *Id.* Our review of this issues is limited. In *Baldwin v. State*, 784 So.2d 148, 156 (¶27) (Miss. 2001), the supreme court stated that the task of an appellate court reviewing a Rule 403 determination is not to engage anew in the Rule 403 balancing process. Rather, it must simply determine whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence.

¶13. The circuit court here anticipated a prior bad acts issue when Rawl testified at the pre-trial certification hearing. The court alerted the State to tell Rawl and other witnesses not to testify to anything except the events of the day cited in the indictment. Whether the State failed to do this, or whether Rawl ignored such an instruction, the testimony came in.[3] Giles did not object, and the circuit court itself did not interrupt the proceedings to deal with this potentially inadmissible testimony.[4] In addition Giles did not request a limiting instruction or raise this issue in his Motion for JNOV. Giles raises this issue for the first time on appeal.

¶14. The failure to object to testimony at trial waives any assignment of error on appeal. Manning v. State, No. 2016-KA-01301-COA, 2018 WL 1165746, at *3 (¶15) (Miss. Ct. App. Mar. 6, 2018), *reh'g denied* (Oct. 2, 2018) (citing *Ross v. State*, 16 So. 3d 47, 57 (¶21) (Miss. Ct. App. 2009)). "The rationale behind the contemporaneous objection rule is so that the trial court may, when possible, correct the error with proper instructions to the jury." *Jenkins v.*

---

[3] There is nothing in the record to show that the State failed to follow the court's instruction.

[4] This is not the testimony of another victim that would show modus operandi or some alternative purpose for the evidence as an exception to Rule 404. *Strickland v. State*, 220 So. 3d 1027, 1032-33 (¶¶16-20) (Miss. Ct. App. 2016). This is also not testimony needed to complete the story for the jury. *Brown v. State*, 890 So. 2d 901, 912 (¶56) (Miss. 2004).

*State*, 75 So. 3d 49, 57 (¶21) (Miss. Ct. App. 2011). Therefore, a trial judge will not be found in error on a matter not presented to him or her for decision. *Smith v. State*, 724 So. 2d 280, 319 (¶155) (Miss.1998). Here Giles's failure to object to Rawl's testimony precludes him from challenging it on appeal.

¶15. A party that fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal. *Starr v. State*, 997 So. 2d 262, 266 (¶11) (Miss. Ct. App. 2008). The plain-error doctrine must be applied only when certain conditions are met, such as when a violation "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at (¶12). Additionally, "[p]lain-error review is properly utilized for 'correcting obvious instances of injustice or misapplied law.'" *Bowdry v. State*, 158 So. 3d 354, 356 (¶6) (Miss. Ct. App. 2014) (quoting *Smith v. State*, 986 So. 2d 290, 294 (¶10) (Miss. 2008)).

¶16. "To determine if plain error has occurred, we must determine if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial." *Bowdry,* 158 So. 3d at 356 (¶7) (citing *Hurt v. State*, 34 So.3d 1191, 1197 (¶17) (Miss. Ct. App.2009)). Here, Giles argues that this testimony was prejudicial to Giles's defense and that the court violated Mississippi Rule of Evidence 105, which was recently amended. Mississippi Rule of Evidence 105 reads:

> If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, unless expressly waived or rebutted, shall restrict the evidence to its proper scope, contemporaneously instruct the jury accordingly, and give a written instruction if requested.

8

M.R.E. 105 (effective July 1, 2015).

¶17. Giles argues that he did not expressly waive the admission of this evidence and thus the circuit court was required sua sponte to immediately instruct the jury to disregard the testimony of other alleged instances of sexual exposure by Giles. Because the court did not do so, Giles claims it deviated from a legal rule. Moreover, Giles argued that the circuit court knew that the error would be obvious because it anticipated the issue beforehand.

¶18. Considering the law and the facts, the admission of Rawl's testimony without objection at trial does not warrant a "plain error" review. We have dealt with the amended Rule 105 in a case similar to this where a defendant raised the admission of prior bad acts in his criminal trial, *Curry v. State*, 202 So. 3d 294 (Miss. Ct. App. 2016). There we said:

> Finally, Curry makes a related argument that the trial judge failed to comply with Mississippi Rule of Evidence 105 because he did not give a limiting instruction concerning the disciplinary violations. As amended effective July 1, 2015, Rule 105 provides that "[i]f the court admits evidence that is admissible . . . for a purpose—but not . . . for another purpose—the court, unless expressly waived or rebutted, shall restrict the evidence to its proper scope, contemporaneously instruct the jury accordingly, and give a written instruction if requested." However, even assuming that the trial judge erred by not offering a limiting instruction, the error was harmless.
>
> To begin with, even as amended, Rule 105 only requires the judge to offer a limiting instruction, which the defendant is free to "waive." M.R.E. 105. The Supreme Court has recognized on a number of occasions that the defendant may not want such an instruction because it may actually "focus the jury's attention" on the potentially prejudicial testimony. *Tate*, 912 So. 2d at 928 (¶28) (quoting *Brown v. State*, 890 So. 2d 901, 913 (¶35) (Miss. 2004)). Thus, Curry's claim on appeal that he was prejudiced because such an instruction was not given is highly speculative. Curry's attorney presumably knew that such an instruction was available upon request, but he did not ask for it. Under the circumstances, we cannot say that the absence of a limiting instruction deprived Curry of a fair trial. *See Robinson v. State*, 940 So. 2d 235, 239 (¶11) (Miss. 2006) (holding that the erroneous denial of a limiting instruction is

9

harmless error unless it deprives the defendant of a fair trial).

*Curry*, 202 So. 3d at 299 (¶¶15-16).

¶19.    Similarly, here Giles's attorney presumably knew that he could have objected or asked the court for a limiting instruction but he chose not to. Although there is language in Rule 105 that appears to put the burden of immediate correction on the trial court, we do not fault a trial court for not sua sponte interrupting testimony when no party has objected. To do so the court may have been accused of erroneously commenting on the evidence that would violate Mississippi Code Annotated section 99-17-35 (Rev. 2015) ("[T]he judge in any criminal cause, shall not sum up or comment on the testimony . . .); *see also Lofton v. State*, 818 So. 2d 1229, 1232 (¶10) (Miss. Ct. App. 2002). Accordingly, under these facts, we cannot say that the failure of the court to interrupt the testimony and instruct the jury about Rawl's comments deprived Giles of a fair trial.

¶20.    Giles has made no showing that the admission of Rawl's testimony prejudiced the jury against him. If anything, the jury seemed more interested in testimony that Giles himself volunteered on cross examination:

> Q.    Mr. Giles, you indicated that you live at 227 Lynn Street; is that correct?
>
> A.    That's correct.
>
> Q.    And you indicated you lived there since what time frame?
>
> A.    Well, I've been locked up a couple of years. So it's been about four or five years.

During its deliberations, the jury sent out one question:

THE COURT: All right. This is 2016-0034. The record shows we're in chambers, that I have received—along with defendant and Defense counsel, along with counsel for the State. I received a note from the jury. It says: (As read)

"On what date was the defendant locked up? After July 18th, 2015?"

¶21. Giles's own testimony that he had previously been "locked up" seemed to have had more influence on the jury than Rawl's testimony of prior exposures. In addition, the State did not argue this statement by Ms. Rawl to the jury. Thus, Giles's plain-error claim is meritless and we hold that the circuit court committed no reversible error with respect to its handling of the Rawl's testimony.

## II. Whether the Circuit Court's manner of selecting alternate jurors constitutes reversible error.

¶22. This Court is familiar with the circuit court's unique method for selecting alternate jurors. As in other cases, the court here required the parties to use all of their preemptory strikes, including those that would be used for alternates, to impanel the full complement of jurors. At the end of closing arguments, the names of two jurors were pulled from a hat; they were deemed to be the alternates and excused. The remaining jurors retired to deliberate and render their verdict. At no point, before or after the jury was empaneled or the alternates chosen, did Giles object even though this procedure deviates from the procedure outlined in the new Mississippi Rules of Criminal Procedure 18.3 and 18.4 that went into effect on July 1, 2017. Giles argues that before the adoption of these rules, appellate courts had excused this court's deviation under Mississippi Code Annotated section 13-5-87 that says that all provisions of law relating to jury selection are "directory merely." Now Giles contends we

11

must recognize and strictly enforce Mississippi Rules of Criminal Procedure concerning jury selection and reverse his conviction for the court's failure to do so.

¶23.	Again, Giles failed to object to the procedure, which would preclude him from arguing it now on appeal. *See infra* at ¶15. Accordingly, we can consider this issue only under the plain error doctrine as well.

¶24.	As we have said before, this is not the first time we have been presented with this circuit court judge's irregular method of jury selection. In *Stone v. State*, 188 So. 3d 593 (Miss. Ct. App. 2015), Stone challenged his drug conviction in part on this issue. We found no merit to the claim for several reasons. First, Stone had failed to make a contemporaneous objection. *Id*. at 595 (¶8). Second, we noted that this Court gives a substantial degree of deference to the judiciary in determining its procedures for empaneling a jury. *Id.* Third, we said that Mississippi Code Annotated section 13-5-87 (Rev. 2012) provides that all provisions of the law concerning the impaneling of juries are *directory* merely, and that a jury so empaneled shall be deemed a legal jury. *Id.*

¶25.	The next challenge to this method of jury selection was raised in *Burrell v. State*, 183 So. 3d 19 (Miss. 2015). There Burrell was convicted of kidnaping, and on appeal he raised this same "abuse of discretion" argument for the court's ignoring the rules for selecting alternate jurors. *Id.* at 22 (¶8). But when the trial began and the court announced its method of jury selection, Burrell made no objection. Only when it came time to draw the names to select the alternates did Burrell object citing Uniform Rules of Circuit and County Court Rule 4.05. The supreme court held that Burrell waived the claim by not objecting at the

beginning of voir dire when the court could have changed his proposed method. *Id*. at (¶11)(citing *Vaughn v. State*, 712 So. 2d 721,725 (¶15) (Miss. 1998)).

¶26.     The third challenge to this circuit court's method of jury selection was raised in *Carr v. State*, 190 So. 3d 1 (Miss. Ct. App. 2015). There Carr was tried for killing a store manager in the commission of a robbery. *Id.* at 2 (¶11). The court notified the parties of its ususal procedure for selecting juror and alternates and neither objected. *Id*. at (¶12). We held that by not objecting Carr had waived his right to complain on appeal. *Id.* at 7 (¶26) (citing *Burrell v. State*, 183 So. 3d 19, 21-22 (¶¶10-11) (Miss. 2015)). We then considered this jury selection process under the plain-error doctrine. *Id*. at (¶27). But to succeed under the plain error standard, Carr would have to show (1) an error at the trial level, and (2) that resulted in a manifest miscarriage of justice. *Id*. at (¶27). On the first element, we held that there was no error because of Mississippi Code Annotated section 13-5-67. *Id.* at (¶28). We went on to find that Carr had not shown how this manner of jury selection had affected his fundamental, substantive rights. *Id.* at (¶29). Carr had not shown that the jurors were incompetent or impartial. Although Carr also claimed that his defense counsel was prejudiced by not being allowed to allocate his preemptory challenges between the panel and the alternates, we noted that preemptory challenges are "not of constitutional dimension." *Simmons v. State*, 805 So. 2d 452, 501 (¶137) (Miss. 2001). Without a showing of partiality by the jury, we held that Carr's challenges were meritless.

¶27.     Here Giles's objections echo those raised in *Stone*, *Burrell*, and *Carr*. Under the precedent set in those cases, we would normally reject Giles's objections as well. But Giles

does argue that these prior rulings concerning the circuit court's jury selection procedure pre-date the adoption of the new rules of criminal procedure which causes us to pause.

¶28.  The comment to Mississippi Rules of Criminal Procedure Rule 1.1 says that the rules are designed to provide comprehensive and uniform practice and procedure for criminal proceedings in *all* Mississippi trial courts.   Further, the comment states:

> It is now well established that "the constitutional concepts of separation of powers dictates that it is within the inherent power of this Court to promulgate procedural rules to govern judicial matters." *Thus when a statute conflicts with the judicial procedure, our rules control.*

M.R.Cr.P. 1.1, comment (citing *State v. Delaney,* 52 So. 3d 348, 351 (Miss. 2011)). Concerning challenges to jurors, Mississippi Rules of Criminal Procedure Rule 18.3 (c)(1)(B) specifically states:  "These challenges for alternate jurors may not be used in the selection of regular jurors."

¶29.  Mississippi Code Annotated section 13-5-67 (Rev. 2012) points out that alternates only replace regular jurors who become unable or disqualified to perform their duties. We now have new Rules of Criminal Procedure that the supreme court has said control even when they conflict with a statute.  Therefore, jury selection methods must conform with the Rules of Criminal Procedure when applicable.

¶30.  We find that the court did deviate from a legal rule in the manner in which it selected alternate jurors.  But we find that there was no proof that the error was prejudicial to Giles. Giles claims that because of the court's procedure, an acquaintance of the victim's mother (Juror 26) was empaneled as a deciding juror as was Juror 34, who had previously served on a criminal jury and found the defendant guilty.  Giles claims that both jurors would have been

14

alternates under the procedure set forth in the rules. A review of the transcript of the proceedings does confirm that Juror 26 was the thirteenth juror impaneled and Juror 34 was the fourteenth. But Giles used only three of the six preemptory challenges afforded him. He could have excused Jurors 26 and 34 altogether, but he did not. Thus, any alleged prejudice was of Giles's own making. Moreover, Giles provided no proof that the jury was not impartial or was biased against him. Consequently, we find no plain error in the manner in which the jury was selected that would require reversal. But we do caution courts to follow the Mississippi Rules of Criminal Procedure, when applicable, in the future when empaneling a jury.

## CONCLUSION

¶31. Because there was no error in the inadvertent admission of a single reference to Giles's alleged prior bad acts and because there was no plain error shown in the manner of the jury selection, we affirm Giles's conviction and sentence with the caveat to the court that in the future the Rules of Criminal Procedure dealing with jury selection must be followed when applicable.

¶32. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**