# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00357-COA

**FARON YOUNG A/K/A FARON WAYNE YOUNG A/K/A FARON W. YOUNG**                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/02/2016 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/27/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., GREENLEE AND TINDELL, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Following a jury trial in the Jones County Circuit Court, Faron Young was convicted of statutory rape and kidnapping.    The circuit court sentenced Young, as a habitual offender, to serve two concurrent terms of thirty years in the custody of the Mississippi Department of Corrections (MDOC).

¶2.     On appeal, Young argues his convictions should be reversed because: (1) his indictment for statutory rape was insufficient; (2) Jury Instruction S-2A constructively amended his indictment for kidnapping; and (3) the evidence was insufficient to support his

kidnapping conviction. For the reasons discussed below, we affirm Young's convictions and sentences for statutory rape and kidnapping.

## BACKGROUND

¶3.    On May 26, 2015, fourteen-year-old "Jane" was living in Laurel, Mississippi with her mother, "Susan," stepfather, and two brothers.[1]  At about 5 p.m. that evening, Jane and one of her brothers started arguing, and their mother told them to go to their rooms. Jane slammed a door on her way to her room, and her mother, Susan, followed her, reaching to grab Jane's shoulder. Once Jane got to her room, she slammed her bedroom door and locked it. Through the bedroom door, Susan heard Jane telling someone on the phone that "her mother beat her." Susan told Jane to stay in her room and cool off. Shortly after, Susan saw Jane walk out the back door toward the pond behind their home, where Jane often went to be alone.

¶4.    Unbeknownst to her mother, Jane had phoned Young from her bedroom to ask that he pick her up. Jane had known Young since she was a young child; Susan and Young used to date, and Young was the father of Jane's youngest brother. When Jane left her house, she walked to the Magnolia Motel on Highway 11, where Young picked her up.

¶5.    Jane testified that after Young picked her up, they drove to a gas station in Laurel and then drove to see a piece of land where Young wanted to put a camper. Jane said that once they got there, she and Young had consensual sex in the back of his truck. Jane testified that she was menstruating at that time. She removed her tampon and underwear. Then Young

---

[1] To protect the identity of sexual-abuse victims, we use fictitious names for the victim and the victim's relatives through which the victim could be identified.

got on top of her and inserted his penis in her vagina. Jane said Young withdrew his penis to ejaculate into a towel.

¶6. Meanwhile, Susan became concerned when she did not find Jane at the pond behind their house. Susan texted and called Jane but received no answer or response. Susan then called Young because he was "like a father to Jane," and when Jane would sometimes refuse to talk to Susan, she would talk to Young. But Young told her that he had not heard from Jane, had not talked to her, and did not know where she was. Concerned, Susan called the police. As it started getting dark outside, Susan called Young a second time and told him she was worried about Jane and had called the police. Young did not tell Susan that Jane was with him.

¶7. Jane testified that after she and Young had sex, they drove to Young's home, where he and his girlfriend, Casey Holifield, lived with their daughter. Jane watched a movie while Young showered. Then, Young went to Jane's house while she stayed at his home. Young later returned and drove Jane to a cemetery near Walmart, where he dropped her off. It was approximately 2 a.m. in the morning. Jane testified that she walked to Walmart, called her mother, and was picked up by police.

¶8. Deputy Carter testified that he went to the Walmart on a dispatch call, where he found Jane, and transported her to South Central Hospital's emergency room to have a sexual-assault examination performed.

¶9. Emergency-room physician Dr. Thomas Bailey testified that he performed a sexual-assault examination on Jane and took swabs from her vulval and vaginal regions. Dr. Bailey

testified that his physical examination of Jane neither confirmed nor negated sexual abuse. He added that he would not expect to find physical evidence if Jane had engaged in consensual sex. Dr. Bailey acknowledged that, during the interview, Jane denied having had sexual intercourse.[2]

¶10.   Brandy Goodman of the Mississippi Forensics Laboratory testified as an expert forensic scientist.  Goodman testified that she tested Jane's vulval and vaginal swabs for the presence of semen by performing a screen for seminal fluid and a microscopic examination for sperm cells.  Goodman testified that serological screening of Jane's vulval and vaginal swabs tested negative for the presence of sperm cells, but her microscopic examination for the presence of sperm cells tested positive.  On cross-examination, Goodman testified that it was highly unlikely that sperm could be transferred to a vagina if a woman handled a towel with ejaculate on it and then touched her vaginal area or inserted a tampon, but she could not rule it out.

¶11.   Mississippi Forensics Laboratory DNA analyst Joseph Heflin testified that he performed a DNA analysis on Jane's vulval and vaginal swabs and the known DNA reference samples from both Jane and Young.  Helfin testified that the male DNA found on Jane's vaginal swabs was consistent with Young's DNA.  The odds the male DNA belonged to someone other than Young were one in over ten billion.

¶12.   Deputy Robert Little of the Jones County Sheriff's Department testified to his involvement in the investigation.  Deputy Little said that he briefly questioned Jane at

_____

[2] During trial, Jane testified that she initially denied having sex with Young because she thought he loved her and she wanted to protect him.

4

Walmart and learned that she had been with Young since roughly 5 p.m. that day. Deputy Little said he then headed toward Young's house and happened to see Young in his vehicle along the way. Deputy Little initiated a traffic stop and read Young his *Miranda*[3] rights. Young initially denied knowing anything about Jane and denied having seen her. But after additional questioning, Young admitted to picking Jane up earlier that day and later dropping her off by Walmart. Young told Little that he had been scared of getting in trouble and had deleted all of the text messages between him and Jane.

¶13. Deputy Little further testified that he drove to the piece of land where the sexual encounter occurred and found a used tampon, which he logged as evidence. Little said that he also searched Young's truck and found some hair samples and a towel in the backseat, which were logged as evidence but not tested for DNA.

¶14. Investigator Thad Windham with the Jones County Sheriff's Office testified that he assisted in obtaining a consent-to-search form from Young and took a recorded statement from Young on May 27, 2015, the day after his arrest. An edited version of Young's statement was played for the jury and admitted into evidence. In his statement, Young said that he picked Jane up from the Magnolia Motel at her request and drove to a piece of land he was considering putting a trailer on. Young denied having sexual intercourse with Jane. When Investigator Windham asked about the used tampon found on the land where Jane and Young had been, Young said "she had to pee."

¶15. Following deliberations, the jury found Young guilty of kidnapping and statutory rape.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Young filed a motion for a judgment notwithstanding the verdict or a new trial, which the circuit court denied. Young has timely appealed, challenging his indictment for statutory rape and kidnapping, and the sufficiency of the evidence of his kidnapping conviction.

## ANALYSIS

### I.    Indictment for Statutory Rape

¶16.    Mississippi Code Annotated section 97-3-65 (Rev. 2014) provides that statutory rape is committed when:

> (a) Any person seventeen (17) years of age or older has sexual intercourse with a child who:
>
>> (i)   Is at least fourteen (14) but under (16) years of age;
>>
>> (ii)  Is thirty-six (36) or more months younger than the person; and
>>
>> (iii) Is not the person's spouse; or
>
> (b) A person of any age has sexual intercourse with a child who:
>
>> (i)   Is under the age of fourteen (14) years;
>>
>> (ii)  Is twenty-four (24) or more months younger than the person; and
>>
>> (iii) Is not the person's spouse.

Young's indictment for statutory rape used language from section 97-3-65(1)(a) and section 97-3-65(1)(b). It alleged that when Young engaged in sexual intercourse with Jane, she was fourteen years old and Young was twenty-four or more months older than her. On August 31, 2016, the State filed a motion to amend the indictment to reflect that Jane was "at least fourteen (14) but under (16) years of age" and that Young was "thirty-six (36) or more months older" than her. The trial court entered an order allowing the amendment, finding

6

the amendment was one of form and not substance.

¶17. On appeal, Young argues his indictment for statutory rape was fatally defective because it contained language from both section 97-3-65(1)(a) and section 97-3-65(1)(b). Young further argues that the trial court's amendment of his indictment was substantive because it materially altered the facts of the offense and his defense to the indictment as originally drawn.

¶18. Whether an indictment is fatally defective is a question of law, which we review de novo. *Moten v. State*, 20 So. 3d 757, 759 (¶4) (Miss. Ct. App. 2009). The purpose of an indictment is to satisfy the constitutional requirement that a "defendant be informed of the nature and cause of the accusation . . . ." U.S. Const. amend. VI; Miss. Const. art. 3, § 26; *see also* URCCC 7.06 (providing that an indictment must include a "plain[,] concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation").[4] Furthermore, "[a]n indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Davis v. State*, 171 So. 3d 537, 540 (¶11) (Miss. Ct. App. 2015) (quoting *Gilmer v. State*, 955 So. 2d 829, 836-37 (¶24) (Miss. 2007)).

¶19. Before amendment, Young's indictment cited section 97-3-65(1)(a) and alleged:

---

[4] We acknowledge that the Uniform Rules of Circuit and County Court relating to criminal practice have been supplanted by the Mississippi Rules of Criminal Procedure and note that these rules became effective July 1, 2017.

FARON WAYNE YOUNG (DOB [Nov. 1979])
A male person over 18 years old, at the time of said offense[:]

Count I: Statutory Rape
[O]n or about the 27th day of May, 2015 A.D., . . . engage[d] in sexual intercourse with [Jane] (Dob: [Nov. 2000]), a female child of fourteen (14) years of age, and that . . . Faron Wayne Young being . . . twenty-four (24) or more months older than the said child, and is not the child's spouse.

Thus, Young's indictment clearly stated that he was being charged with statutory rape in violation of section 97-3-65(1)(a). The indictment also listed the date of the offense and Jane's birthday; therefore, Young was informed that the offense occurred when Jane was fourteen. We find the unamended indictment was not so flawed as to warrant reversal. We thus proceed to review whether the trial court's amendment of Young's indictment was substantive.

¶20. An "amendment to an indictment must be of form and not substance to be permissible." *Chandler v. State*, 789 So. 2d 109, 111 (¶4) (Miss. Ct. App. 2001). To be an amendment of form, an amendment must not (1) "materially alter facts which are the essence of the offense on the face of the original indictment" or (2) "materially alter a defense to the original indictment so as to prejudice the defendant's case." *Id*. The amendment will not prejudice the defendant's case when "the defense as it originally stood would be equally available after the amendment is made." *Crawford v. State*, 754 So. 2d 1211, 1219 (¶17) (Miss. 2000).

¶21. Young claims that because the amendment to his indictment changed his and Jane's ages, it materially altered the essential facts of the offense. But both Young's indictment, in its original and amended forms, put him on notice that he was charged with the statutory rape

of a fourteen year old. We do not find that amendment materially altered the essence of the offense. Nor do we find Young's defense was prejudiced by the amendment. Young's defense to the indictment, a general denial, was equally available to him before and after the indictment's amendment. *Id.* This issue is without merit.

## II. Variance Between Kidnapping Indictment and Jury Instruction

¶22. Count Two charged Young with violating section 97-3-53 (Rev. 2014), by kidnapping or forcibly seizing and confining Jane, who was under sixteen years old, against the will of her parents. But at trial, the court granted a jury instruction that slightly differed from Count Two, permitting the jury to find Young guilty on the count if it found "Young did . . . forcibly seize, *inveigle*, or kidnap [Jane], a child under the age of sixteen (16) years against the will of her parents." Young's trial counsel did not object to this instruction, and the jury found Young guilty of kidnapping under this count.

¶23. On appeal, Young claims for the first time that the instruction constructively amended his indictment. He acknowledges his waiver but requests plain-error review and reversal of his kidnapping conviction. Although Young's failure to object to S-2A bars review of this issue, we find Young suffered no substantial injustice from the variance.

### A. Waiver

¶24. Again, "the primary purpose of an indictment 'is to give the defendant fair notice of the crime charged.'" *Faulkner v. State*, 109 So. 3d 142, 146 (¶13) (Miss. Ct. App. 2013) (quoting *Nix v. State*, 8 So. 3d 141, 144-45 (¶16) (Miss. 2009)). The indictment must contain "the essential facts constituting the offense charged and shall fully notify the defendant of

9

the nature and cause of the accusation." URCCC 7.06. And "once the grand jury hands down a true bill that alleges an accused committed a particular crime by engaging in certain conduct—*absent waiver* or a request for a lesser included offense—the accused must be prosecuted for that crime, and no other." *Decker v. State*, 66 So. 3d 654, 656 (¶6) (Miss. 2011) (emphasis added). Here, there was such a waiver.

¶25. Young conceded he did not object to S-2A as constructively amending the indictment, which may serve as a procedural bar to appellate review. *See Faulkner v. State*, 109 So. 3d 142, 146 (¶12) (Miss. Ct. App. 2013) (explaining that failure to object to a variance between an indictment and a jury instruction renders the issue procedurally barred on appeal). Waiver aside, we find no reversible error.

### B. Plain-Error Review of the Variance

¶26. Under the plain-error doctrine, this Court may exercise discretion to correct an obvious error the defendant failed to properly raise—but only where the error affects the defendant's fundamental, substantive rights. *Conners v. State*, 92 So. 3d 676, 684 (¶15) (Miss. 2012) (citing *Smith v. State*, 986 So. 2d 290, 294 (¶10) (Miss. 2008)). We will correct such an error if it "resulted in a manifest miscarriage of justice or 'seriously affects the fairness, integrity[,] or public reputation of judicial proceedings.'" *Id.* (quoting *Brown v. State*, 995 So. 2d 698, 703 (¶21) (Miss. 2008)).

¶27. Considering whether Young's substantial rights were violated, we note that "[n]ot all variances between the indictment and instructions constitute a constructive amendment, nor do they rise to plain error." *Bell v. State*, 725 So. 2d 836, 855 (¶61) (Miss. 1998). "To

properly categorize an instruction as error, its variance from the language of the indictment must be material." *Faulkner*, 109 So. 3d at 147 (¶16) (internal quotation marks omitted) (quoting *Nix*, 8 So. 3d at 145 (¶16)). "While trial judges should generally strive to craft jury instructions that track the indictment's language, an instruction is not necessarily fatally defective for failure to do so if the instruction accurately follows the requisite elements of the crime." *Id.* (internal quotation mark omitted) (quoting *Duplantis v. State*, 708 So. 2d 1327, 1344 (¶76) (Miss. 1998)).

¶28. Assessing the effect of the variance on the integrity of Young's trial, we find that S-2A did not substantially alter the requisite elements of kidnapping. The essence of the charged offense remained the same, as the instruction still required the jury to find beyond a reasonable doubt that Young kidnapped Jane, a minor child under the age of sixteen, against the will of her parents. Further, we find S-2A's use of "inveigle," which appears in the statutory definition of kidnapping, did not prejudice Young's defense. Young defended on the basis that Jane called him to pick her up, voluntarily left with him, and was never held against her will. Young also argued in his defense that Jane's mother never instructed him not to pick Jane up. Regardless of whether the indictment charged Young with forcibly seizing, inveigling, or kidnapping Jane, Young's defense would still have been the same. Finding no reversible error, we affirm.

### III.   Sufficiency of the Evidence of Kidnapping

¶29. "In considering whether the evidence is legally sufficient to sustain a conviction, . . . the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused

committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Russell v. State*, 924 So. 2d 604, 608 (¶8) (Miss. Ct. App. 2006) (internal quotation marks omitted). "The relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Green v. State*, No. 2017-KA-00770-SCT, 2018 WL 5076318, at *3 (Miss. Oct. 18, 2018) (quoting *Hearn v. State*, 3 So. 3d 722, 740 (¶54) (Miss. 2008)).

¶30.    This review does not require the court to ask "whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush*, 895 So. 2d at 843 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). If the Court should determine that the facts are not sufficient to support the verdict, then the "proper remedy is for the appellate court to reverse and render." *Id.*

¶31.    Under section 97-3-53, a defendant may be found guilty of kidnapping in three ways. *Burrell v. State*, 183 So. 3d 19, 23 (¶23) (Miss. 2015). In this case the State had to prove Young:

> (A) acting without lawful authority, and
>
> (B) with or without intent to secretly confine,
>
>> (1)    forcibly seized and confined another person; or
>>
>> (2)    inveigled or kidnapped another person with intent to confine or imprison her against her will; or

(3)     forcibly seized, inveigled[5] or kidnapped a child under the age of sixteen years against the will of her parents, guardians, or lawful custodians.

Miss. Code Ann. § 97-3-53.

¶32.    Here, there was sufficient evidence to prove that Young kidnapped Jane, a child under sixteen years old, under the third method.  We note that there is no evidence that Young inveigled Jane by tricking or deceiving her; Jane testified that she called Young, asked him to pick her up at the Magnolia Motel, and left her house "on her own."  But Jane was under the age of sixteen, and the evidence shows that Young's failure to return Jane to her mother's custody was against her mother's will.  After Susan could not find Jane, she called Young sometime between 5:10 and 5:30 p.m.  Susan testified that over the phone, Young said that he had not heard from Jane, had not talked to her, and did not know where Jane was.  But Young was lying—before Jane left her house, she called Young to pick her up at the Magnolia Motel.  Later, as it was getting dark out, Susan called Young a second time and told him she was worried about Jane and had called the police.  Young did not tell Susan that Jane was with him.  Susan testified that when she finally heard from Jane, it was around 2:15 in the morning.

¶33.    Viewing the evidence in the light most favorable to the prosecution, we find that a rational juror could have found beyond a reasonable doubt that Young kidnapped Jane, a minor child under the age of sixteen years, against the will of her parents.  We hold there was

---

[5] "Inveigle" means to lure or entice through deceit or insincerity.  Black's Law Dictionary 952 (10th ed. 2014); *see Myers v. State*, 770 So. 2d 542 (Miss. 2000) (finding inveigling where a defendant promised to drive a seven-year-old girl to her nearby home in Pascagoula, but instead drove her to Alabama after she willingly got in his van).

sufficient evidence to support Young's kidnapping conviction.

## CONCLUSION

¶34.   We find that Young's indictment for Count One, statutory rape was not fatally defective, and the trial court's amendment of this count was not substantive. Further, we find the variance between Young's indictment and jury instruction S-2A was not reversible error, and find the evidence sufficient to support Young's kidnapping conviction. We therefore affirm Young's convictions and sentences for statutory rape and kidnapping.

¶35.   **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR.**