# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01151-COA

**CHRISTOPHER BUTLER A/K/A**                                    **APPELLANT**
**CHRISTOPHER D. BUTLER**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

DATE OF JUDGMENT:               08/01/2017
TRIAL JUDGE:                    HON. JEFF WEILL SR.
COURT FROM WHICH APPEALED:      HINDS COUNTY CIRCUIT COURT,
                                FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                                BY: GEORGE T. HOLMES
                                    JUSTIN TAYLOR COOK
ATTORNEYS FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                BY: ALICIA MARIE AINSWORTH
                                    KATY GERBER
SPECIAL PROSECUTOR:             STANLEY ALEXANDER
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 09/17/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., TINDELL AND McCARTY, JJ.**

**TINDELL, J., FOR THE COURT:**

¶1.     A Hinds County jury convicted Christopher Butler of possession of more than one kilogram but less than five kilograms of marijuana. The Hinds County Circuit Court, First Judicial District, sentenced Butler as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) and as a subsequent drug offender under Mississippi Code Annotated section 41-29-147 (Rev. 2018) to thirty years in the custody of the Mississippi Department of Corrections (MDOC) and fined him $500,000.

¶2.    On appeal, Butler argues: (1) the admission into evidence of a confidential informant's statement to a law-enforcement officer violated his right to confront the witnesses against him; (2) the circuit court erroneously limited the testimony of his witness; (3) the introduction of certified copies of his prior convictions violated his right to confrontation; (4) the circuit court erroneously appointed the Office of the Attorney General (the Attorney General) as special prosecutor in his case; (5) the circuit court erred by denying his recusal motion; and (6) his attorney rendered ineffective assistance.[1]

¶3.    Finding no error, we affirm Butler's conviction and sentence.

## FACTS

¶4.    On April 19, 2011, Agent Kevin Dear received a call from a confidential informant, who provided Butler's name and address and stated that Butler was selling drugs from his home. The informant further stated that he had seen marijuana inside Butler's home within the last twenty-four hours. At the time of Butler's arrest, Agent Dear worked as a narcotics detective for the Jackson Police Department and was part of a multi-agency task force that worked to combat local drug activity. By the time of Butler's trial, Agent Dear worked for the Mississippi Bureau of Narcotics (MBN). Based on the informant's information, Agent Dear obtained a warrant to search Butler's home.

¶5.    Around 12:30 p.m. on April 19, 2011, the task-force agents entered Butler's home.

---

[1] Butler's appellate attorney from the Office of State Public Defender filed a brief asserting Issues 1 and 2. Butler then filed his own pro se supplemental brief asserting Issues 3 through 6.

Agent Dear testified that there was a strong odor of marijuana as they approached Butler's home and entered. After securing the home and finding no one inside, the agents began to search for drugs. Agent Dear testified that the odor of marijuana was especially strong in the home's front room, where agents discovered four gallon-size Ziploc bags that contained a green leafy substance later identified as marijuana. The four bags contained a total of 1,772 grams, or approximately four pounds, of marijuana. The agents also uncovered over $70,000 in cash, the largest amount of which was stored in a master-bathroom drawer. In both the kitchen and an office area, the agents found a money counter. The office area also contained several ledgers.

¶6. Agent Dear testified that, after arresting Butler and reading him his *Miranda*[2] rights, Butler signed a form acknowledging that he was willing to give the agents a statement. Agent Dear further testified that Butler then verbally admitted that the recovered drugs belonged to him, but he refused to provide the agents with a signed written statement.

¶7. In questioning Butler, the agents learned that Butler's home contained a multi-camera surveillance system. Around 8:30 a.m. on April 19, 2011, the surveillance footage showed Butler exit his house and then return carrying a large duffel bag. A car arrived at Butler's house shortly before 9 a.m., and two men walked toward the house with Butler. The men and Butler exited the house around 9 a.m. Butler carried the large duffel bag toward the passenger side of the men's car. Butler then returned to the house without the bag. When

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

he reentered the house, Butler carried a plastic trash bag, which he set down on the floor. Butler then continued into his kitchen holding a large amount of cash, which he set on the counter. He later carried the cash into the master bathroom. Around 9:39 a.m., the video footage showed Butler and another man enter Butler's house. At 9:42 a.m., Butler and the other man exited the house. Butler appeared to be carrying the plastic bag in his hand. A minute later, Butler reentered his home, opened an ottoman, and dropped four gallon-size Ziploc bags into the ottoman. Butler then carried some cash through his kitchen and into the master bathroom. At 12:32 p.m., the video showed the search team enter Butler's home. At 12:42 p.m., one of the agents opened the ottoman and discovered the bags of marijuana.

¶8.     Prior to trial, the Attorney General moved to disqualify Robert Shuler Smith, the Hinds County District Attorney, from all matters dealing with Butler. In his response, District Attorney Smith agreed that he should be recused from all criminal prosecutions in Butler's case and formally recused himself. In an August 23, 2016 order, the circuit court granted the Attorney General's motion to disqualify District Attorney Smith. The circuit court appointed the Attorney General's Division of Public Integrity as special prosecutor in the matter.

¶9.     On December 16, 2016, Butler filed a motion for the circuit judge's recusal from his case. According to Butler, recusal was appropriate due to "contentions" between the judge and District Attorney Smith. The circuit judge noted, however, that District Attorney Smith no longer served as the prosecutor on Butler's case after voluntarily recusing himself almost

4

six months previously. After finding that Butler's attorney had "failed to point to any facts in the record that the undersigned is prejudiced against his client, but rather ha[d] made broad accusations that prejudice should be inferred based [on] alleged animosity with an attorney who never represented the [D]efendant in this action and is no longer involved in the pending litigation[,]" the circuit judge denied Butler's recusal motion.

¶10. Also prior to trial, the Attorney General moved to exclude testimony from Butler's proposed witness Josh Ledford. Ledford arrived at Butler's home while agents were still conducting their search. The agents escorted Ledford into Butler's kitchen and questioned him but did not charge or arrest Ledford. The defense proffered testimony from Ledford that he observed a canine inside Butler's home and that the dog neither barked nor, in his opinion, in any way alerted to the presence of drugs in Butler's home. The circuit court found Ledford's proffered testimony irrelevant because the observed events occurred after the agents had found and removed the marijuana from Butler's home. The circuit court also concluded Ledford's testimony was "not competent evidence as there was no foundation that he [Ledford] was—either as a layman or an expert—aware of how a drug-sniffing dog alerts."

¶11. The defense also proffered Ledford's testimony that he overheard some of the agents use a racially inappropriate term in reference to Butler. The circuit court considered the testimony's relevance under Mississippi Rule of Evidence 401 and then conducted a balancing test under Mississippi Rule of Evidence 403. After doing so, the circuit court

found that the proffered testimony was "wholly irrelevant to the guilt or innocence of whether . . . [Butler] possessed drugs on the date charged" and "seem[ed] to be elicited by the defense in an attempt to inflame the passions of the jurors." The circuit court therefore concluded that the testimony was not only irrelevant but that the testimony's danger of unfair prejudice to the State substantially outweighed any alleged probative value. The circuit court did, however, allow Ledford to testify that he never smelled any suspicious odors while inside Butler's home.

¶12. After considering all the evidence and testimony, the jury found Butler guilty of possession of more than one kilogram but less than five kilograms of marijuana. The circuit court then sentenced Butler as both a habitual offender and a subsequent drug offender to thirty years in MDOC's custody and fined him $500,000. Butler filed an unsuccessful motion for a judgment notwithstanding the verdict or, alternatively, a new trial. Aggrieved, Butler appeals.

**DISCUSSION**

I. **Confidential Informant's Statement**

¶13. Butler filed a pretrial motion seeking disclosure of the confidential informant's identity. According to the motion, the informant's statement to Agent Dear depicted the informant as an eyewitness to the events that supported the charge against Butler. The circuit court denied Butler's motion. For the first time on appeal, Butler contends that the circuit court erred by allowing Agent Dear to testify about the confidential informant's statement

6

because the statement was hearsay and its admission violated Butler's right to confront the witnesses against him. Because he failed to raise these objections before the circuit court, Butler asks this Court to review his argument under the plain-error doctrine.

¶14. "To determine whether plain error has occurred, the reviewing court must determine: (1) if the trial court deviated from a legal rule; (2) whether that error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial." *Robinson v. State*, 247 So. 3d 1212, 1226 (¶27) (Miss. 2018). Ordinarily, appellate courts "review a circuit judge's ruling regarding disclosure of a confidential informant for abuse of discretion." *Ray v. State*, 238 So. 3d 1118, 1123 (¶26) (Miss. 2018). Uniform Rule of Circuit and County Court 9.04(B)(2)[3] provides:

> Disclosure of an informant's identity shall not be required unless the confidential informant is to be produced at a hearing or trial or a failure to disclose his/her identity will infringe the constitutional rights of the accused or unless the informant was or depicts himself/herself as an eyewitness to the event or events constituting the charge against the defendant.

¶15. In explaining his reasons for requesting the warrant to search Butler's home, Agent Dear testified about the statement made to him by the confidential informant. According to Agent Dear, the informant stated that drugs were being stored in and sold from Butler's home and that, within the last twenty-four hours, the informant had seen marijuana at Butler's

---

[3] Effective July 1, 2017, the Mississippi Rules of Criminal Procedure replaced the Uniform Rules of Circuit and County Court. Although the new rules were in effect at the time of Butler's trial on July 25, 2017, the former rules remained in effect at the time the circuit court entered its May 21, 2013 order denying Butler's pretrial motion to compel.

7

home.  The confidential informant did not, however, "witness the offense charged [against Butler] and did not serve as a witness in the proceeding" against Butler.  *Esparaza v. State*, 595 So. 2d 418, 424 (Miss. 1992).  Instead, "[t]he informant merely provided data that established probable ca[u]se to support a search warrant."  *Id.*  As our caselaw clearly establishes, this "degree of connection with the crime charged constitutes too tenuous a link to justify disclosing the informant."  *Id.*; *see also Read v. State*, 430 So. 2d 832, 836 (Miss. 1983) (affirming the nondisclosure of an informant's identity where the informant reported seeing drugs at a residence but neither participated in the crime nor was present when officers searched the house).

¶16.    Because the confidential informant here merely provided Agent Dear with reliable information as to Butler's location and possession of marijuana, we find no plain error in the circuit court's denial of Butler's motion to compel disclosure of the informant's identity. Further, to the extent Butler now asserts a hearsay challenge to Agent Dear's testimony about the informant's statement, we likewise find no plain error.  Even if Butler had raised a contemporaneous trial objection on hearsay grounds, our caselaw holds that "an informant's tip is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time[.]"  *Swindle v. State*, 502 So. 2d 652, 657-58 (Miss. 1987).  We therefore find these arguments lack merit.

## II.     Ledford's Testimony

¶17.    Butler next asserts that the circuit court prevented him from presenting his theory of

defense when the court excluded Ledford's testimony that he heard agents use a racial slur to describe Butler. Prior to trial, the State moved to wholly exclude Ledford as a witness. After hearing Ledford's proffered testimony at the pretrial hearing, however, the State moved instead to limit Ledford's testimony. At the pretrial hearing, Ledford testified as to what he heard and observed while agents questioned him at Butler's home on April 19, 2011. During his testimony, Ledford stated that he heard agents use a racial slur while referring to Butler. The State moved to exclude that portion of Ledford's testimony. In response, Butler's attorney raised no argument that Ledford's testimony as to the alleged use of the racial slur should be admissible, and he assured the circuit court that he would "not intentionally elicit any hearsay testimony." The circuit court then excluded that portion of Ledford's testimony on the basis that any alleged use of the racial slur lacked relevance to the charge against Butler. The circuit court further found that, even if relevant, the testimony's danger of unfair prejudice to the State outweighed any probative value.

¶18. On appeal, Butler asserts that the circuit court's exclusion of Ledford's testimony about the alleged use of the racial slur prevented him from presenting his theory of defense at trial. Butler never raised this issue before the circuit court, though, and our appellate courts have repeatedly held "that [the] failure to object contemporaneously at trial waives any claim of error on appeal." *Graves v. State*, 216 So. 3d 1152, 1161 (¶26) (Miss. 2016). Because Butler has waived his right to raise this alleged error on appeal, we decline to address the merits of his argument.

9

### III. Certified Copies of Butler's Prior Convictions

¶19. Butler contends that his right to confrontation was violated when the circuit court allowed the State to introduce into evidence certified copies of his prior convictions. In making this argument, Butler also asserts that his indictment contained incorrect information.

¶20. Butler wholly fails to identify the information in his indictment that was allegedly incorrect. The record reflects, however, that the State moved to amend Butler's indictment prior to trial. According to the State's motion, the enhancement portion of Butler's indictment contained a scrivener's error that incorrectly identified two of the multiple cause numbers provided for Butler's prior felony convictions. The circuit court found the amendment was one of form rather than substance and granted the State's request to redact the two incorrect cause numbers.

¶21. To be permissible, an amendment to an indictment must be one of form rather than of substance. *Young v. State*, 271 So. 3d 650, 656 (¶20) (Miss. Ct. App. 2018). An amendment as to form neither (1) "materially alter[s] facts which are the essence of the offense on the face of the original indictment" nor (2) "materially alter[s] a defense to the original indictment so as to prejudice the defendant's case." *Id.* "The amendment will not prejudice the defendant's case when the defense as it originally stood would be equally available after the amendment is made." *Id.* (internal quotation mark omitted).

¶22. Here, the State's requested amendment in no way altered the facts underlying Butler's indictment or prejudiced Butler's opportunity to present a defense to the crime charged.

Therefore, to the extent that Butler now argues the circuit court erroneously amended his indictment to redact the incorrect cause numbers, we find this issue lacks merit.

¶23. As to Butler's claim that the introduction into evidence of the certified copies of his prior convictions violated his right to confrontation, we likewise find this argument lacks merit. As we have previously recognized:

> [C]ertified copies of the indictments and sentencing orders are not documents created solely for an evidentiary purpose, but rather are created for the administrative purpose of tracking criminal proceedings. Thus, self-authenticating records of a defendant's prior convictions are not testimonial evidence, and [they] do not trigger a defendant's constitutional right to confront witnesses.

*Wallace v. State*, 195 So. 3d 852, 854 (¶7) (Miss. Ct. App. 2016) (citation and internal quotation marks omitted); *see also Burrell v. State*, 183 So. 3d 19, 25 (¶19) (Miss. 2015) (adopting the Court of Appeals' rationale that self-authenticating records of a defendant's prior convictions do not constitute testimonial evidence).

## IV. Special Prosecutor

¶24. Butler also claims the circuit court erred by appointing the Attorney General as special prosecutor in his case. To support his claim, Butler relies on *Williams v. State*, 184 So. 3d 908 (Miss. 2014). In *Williams*, the supreme court held that "[t]he involuntary disqualification of the local district attorney and the substitution of the Office of the Attorney General, over the objection of the local district attorney, . . . [were] wholly unsupported by any constitutional, common law, or statutory authority of the State of Mississippi." *Id.* at 909 (¶1).

11

¶25.   The supreme court briefly summarized the facts of *Williams* as follows:

> Following this Court's reversal and remand of the murder conviction of Harvey Williams, Robert Shuler Smith, the Hinds County District Attorney, sought an order of *nolle prosequi*, which was granted by the circuit court. Two days later, and without notice to the accused, the judge sought to vacate his previously entered *nolle prosequi* order, "recuse" the district attorney, and transfer the case to the Mississippi Attorney General's Office. A second circuit court judge found that the order of *nolle prosequi* was not subject to recision, but appointed the Attorney General's Office as a special prosecutor in the place of the local district attorney, merely because the duly elected and serving local prosecutor had exercised his discretion not to prosecute Williams.

*Id.* Williams filed an interlocutory appeal, which the supreme court granted to determine whether Mississippi's Constitution, common law, and/or statutory law authorized the Attorney General's intervention in a criminal prosecution in which the local district attorney opposes such interference. *Id.* at 911 (¶¶8-9).

¶26.   The *Williams* court first considered Mississippi's Constitution and common law and held that neither "permits the involuntarily disqualification of a duly elected district attorney from the lawful performance of his duty and the substitution of the attorney general in the district attorney's place and stead in a case in which no legal grounds for the district attorney's disqualification exists." *Id.* at 913-14 (¶17). In next considering whether statutory law authorized the Attorney General's intervention in Williams's case, the supreme court recognized that Mississippi Code Annotated section 7-5-53 (Rev. 2014) permitted the Attorney General to assist a local district attorney in the discharge of his or her duties only when (1) required by public service or (2) directed by the governor in writing. *Williams*, 184 So. 3d at 915 (¶21). The *Williams* court found, however, that the district attorney neither

requested nor required the Attorney General's assistance and that no record evidence demonstrated that public service required the assistance. *Id.* at (¶¶21-22).

¶27. The *Williams* court further acknowledged that Mississippi Code Annotated section 25-3-21 (Rev. 2010) "provides [the following] three situations in which a district attorney *pro tempore* shall be appointed: the district attorney is absent, the district attorney is unable to perform his duties, or the district attorney is disqualified." *Williams*, 184 So. 3d at 916 (¶23). The *Williams* court found, though, that the circuit court never articulated any lawful reason or statutory authority for recusing the district attorney and appointing a special prosecutor, that the district attorney's office never filed a motion setting forth grounds for its disqualification or recusal from Williams's case, and that the record as a whole was devoid of any specified statutory bases for the appointment of a district attorney pro tempore. *Id.* at 916-17 (¶¶24-26). As a result, the supreme court concluded that the circuit court lacked statutory authority to appoint the Attorney General to intervene in Williams's case. *Id.* at 914 (¶18).

¶28. Despite Butler's reliance on *Williams*, we find *Williams* and the present case are distinguishable from each other in several respects. In *Williams*, the district attorney sought, and the circuit court granted, an order of nolle prosequi. *Id.* at 909 (¶1). In the present case, District Attorney Smith moved for a nolle prosequi order at a January 22, 2015 pretrial hearing, but the circuit court directed District Attorney Smith to document in a written motion with corroborating evidence his reasons for requesting the order. The court then set,

13

and District Attorney Smith agreed to, a ten-day deadline for complying with the court's request. After District Attorney Smith failed to comply with the circuit court's request, the court entered an order denying the motion for nolle prosequi. Thus, unlike in *Williams*, no order of nolle prosequi was ever entered in Butler's case.

¶29. Also unlike in *Williams*, District Attorney Smith voluntarily recused himself from Butler's case. In June 2016, the Attorney General charged District Attorney Smith with repeated violations of Mississippi Code Annotated section 97-11-3 (Rev. 2014) by illegally consulting, advising, counseling, and defending Butler. On July 11, 2016, the Attorney General moved to disqualify District Attorney Smith from all criminal matters related to Butler. In his response to the Attorney General's motion, District Attorney Smith recused himself from Butler's case and requested that the circuit court appoint a special prosecutor "with no connections to the Attorney General's Office or the District Attorney's Office[.]" On August 23, 2016, the circuit court granted the motion to disqualify District Attorney Smith from Butler's case and appointed a special prosecutor. The circuit court found District Attorney Smith's allegations unpersuasive that the Attorney General had a conflict of interest in Butler's case. Because the Attorney General was already the prosecuting agency in other causes of action against Butler, the circuit court concluded that, in the interest of judicial economy, the Attorney General should also be appointed as special prosecutor on the current matter.

¶30. As the supreme court recognized in *Williams*, section 25-31-21 provides for the

14

appointment of a district attorney pro tempore when the district attorney has been disqualified from a case. *Williams*, 184 So. 3d at 916 (¶23). While such a situation failed to apply in *Williams*, District Attorney Smith actually authorized his disqualification here from Butler's case. Also unlike in *Williams*, the circuit court in this case articulated its legal reasons for disqualifying District Attorney Smith—i.e., the charges against District Attorney Smith for allegedly violating section 97-11-3 by improperly consulting, advising, counseling, and defending Butler.

¶31. As stated, District Attorney Smith objected to the Attorney General being appointed as special prosecutor in Butler's case and claimed that the Attorney General had a conflict of interest. The record reflects no evidence, however, that Butler ever objected to the Attorney General's appointment, and the circuit court found no merit to District Attorney Smith's objection to the Attorney General's appointment on the basis of a conflict of interest.

¶32. Based on the facts presented and applicable caselaw and statutory law, we find no error in the circuit court's appointment of the Attorney General as special prosecutor in Butler's case. We therefore find this assignment of error lacks merit.

### V.     Motion to Recuse

¶33. Butler also asserts that the circuit judge erred by not recusing himself from Butler's case. "The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application." *Latham v. Latham*, 261 So. 3d 1110, 1112 (¶7) (Miss. 2019). The appellate courts

15

"*presume*[] that a judge, sworn to administer impartial justice, is qualified and unbiased." *Kinney v. S. Miss. Planning & Dev. Dist. Inc.*, 202 So. 3d 187, 194 (¶20) (Miss. 2016). To overcome this presumption, Butler must present "evidence of a reasonable doubt about the validity of the presumption." *Id.* Reasonable doubt is established "when there is a question of whether a reasonable person, knowing all of the circumstances, would harbor doubts about the judge's impartiality." *Id.* (internal quotation mark omitted).

¶34. Butler filed a motion on December 30, 2015, seeking the circuit judge's recusal. A few days later on January 4, 2016, Butler filed an amended motion for the circuit judge's recusal. Neither the December 2015 motion nor the January 2016 amended motion appears in the record. The record instead indicates that the circuit clerk's office was unable to locate either motion. The record does contain, however, Butler's December 16, 2016 motion requesting the circuit judge's recusal.

¶35. In his December 2016 recusal motion, Butler asserted that "contentions" between the judge and District Attorney Smith "became obvious" after District Attorney Smith sought a nolle prosequi order in Butler's case. Butler further asserted that, after the Attorney General charged District Attorney Smith with multiple violations of Mississippi statutory law, "the media and court filings in the cases against [District Attorney] Smith" indicated that District Attorney Smith and the circuit judge had made "allegations of wrongdoing" against each other. According to Butler, "[t]he emotions evoked by th[is] collateral litigation[,]" which stemmed directly from Butler's criminal matters, would cause the circuit judge to be biased

16

against Butler. Butler therefore asked for the circuit judge's recusal.

¶36. Our caselaw clearly holds "that there must be evidence in the record in order to overcome the presumption that a trial judge was [partial]. Moreover, mere speculation is insufficient to raise reasonable doubt as to the validity of the presumption that the trial judge was qualified and unbiased." *Jackson v. State*, 1 So. 3d 921, 927-28 (¶18) (Miss. Ct. App. 2008) (citation and internal quotation mark omitted). Butler offers nothing more than mere speculation to support his claim of judicial partiality. His allegations of "contentions" between the circuit judge and District Attorney Smith fail to demonstrate how the judge was prejudiced against Butler six months after District Attorney Smith's recusal in the case. Butler points to no specific rulings or record evidence that would indicate the circuit judge was biased against him or unqualified to hear his case. We therefore find this issue lacks merit.

## VI. Ineffective Assistance

¶37. In his final assignment of error, Butler alleges that he received ineffective assistance of counsel, but he asks to preserve his claim for post-conviction proceedings. We generally do not consider an ineffective-assistance claim made on direct appeal "because we are limited to the trial[-]court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim." *Metcalf v. State*, 265 So. 3d 1242, 1250 (¶35) (Miss. Ct. App. 2019) (internal quotation mark omitted). We only determine the merits of such a claim if "(1) the record affirmatively shows ineffectiveness of constitutional

17

dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Id.* at 1251 (¶35). Because Butler provides no stipulation that the record is adequate for review of his ineffective-assistance claim, we dismiss this issue without prejudice so that he may raise the claim in a properly filed motion for post-conviction relief.

## CONCLUSION

¶38. Because we find no merit to Butler's assignments of error on appeal, we affirm his conviction and sentence.

¶39. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

18