# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00819-COA

**MARK HAND A/K/A MARK EUGENE HAND**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/2022 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON HORNE |
| DISTRICT ATTORNEY: | CHRISTOPHER DOUGLAS HENNIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/02/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. Mark Hand was convicted of one count of kidnapping and one count of child exploitation in the Covington County Circuit Court. On appeal, he claims the jury's verdicts went against the overwhelming weight of the evidence. We find that the evidence supported the jury's verdicts and affirm his convictions.

## FACTS AND PROCEDURAL HISTORY

¶2. Fifty-one-year-old Mark Hand was family friends with "Kate" and her ten-year-old

daughter "Nina."[1]  During Nina's early childhood, Kate would allow Hand to babysit Nina and drive her to the store.  Hand's mother lived within walking distance to Kate's home and Nina would often spend time there with Hand.  As Nina became older, Kate's friends began to describe Hand and Nina's relationship as inappropriate.  Kate testified that Hand began to act "strange and different" around Nina.  On one occasion, Hand approached Kate and told her that he believed another man had "messed with" Nina.  Kate believed Hand was trying to "come clean" about something himself.  Nina denied that anyone touched her inappropriately and called Hand "crazy."  Kate told Hand to stay away from ten-year-old Nina.

¶3.     Around November 2020, Nina began to act rebellious, often stealing Kate's phone and sneaking out of the house.  Despite Kate forbidding Hand to see Nina, Hand continued to see Nina and contact her by phone, even sending her a nude photo.  Between August 2020 and November 2020, Hand brought Nina to his property, which was ten to fifteen miles away from Kate's home, at least twice.  Nina's relatives picked her up and brought her home to Kate on both occasions.

¶4.     Nina's school contacted Kate concerning drawings Nina drew in class.  Nina had drawn two stick figures surrounded by hearts and phrases such as: "I love you Mark." "Love you baby, you f— me baby." and "Mark and [Nina]."  Investigator Shane Little of the

---

[1] "Nina" and "Kate" are fictitious names used in place of the victim and victim's mother's real names, respectively, to protect the minor child's privacy.

Covington County Sheriff's Office was also contacted and arranged for Nina to be interviewed at Kids Hub in Hattiesburg. Kids Hub staff conduct forensic interviews of minors who are suspected victims of abuse and neglect. During her interview, Nina denied knowing "Mark" but admitted that someone else had touched her inappropriately.

¶5. About two days later, on November 8, 2020, Kate came home to discover Nina was not at home, and Kate reported Nina missing to the police. Sergeant Logan Pruitt and Deputy Madilyn Walls responded to Kate's 911 call and learned that Kate suspected Nina was with Hand on his property. Kate told the officers that "this has happened before." The officers arrived at Hand's property and noticed a white car that matched the description of Hand's vehicle. Sergeant Pruitt approached the car and saw Hand inside. He then noticed Nina trying to crawl underneath the car.

¶6. Once the officers reached the car, Hand exited the vehicle, and Nina crawled from underneath. Hand explained that Nina had walked to his property.[2] Hand claimed he had contacted Nina's aunt to pick her up. The officers arrested Hand for delinquency of a minor, which caused Nina to become emotional and scream, "He didn't touch me. He didn't do anything wrong." Sergeant Pruitt found three cell phones within Hand's reach that he collected for forensic evidence.

¶7. Investigator Little questioned Hand after his arrest. Hand claimed that several people may have raped or sexually abused Nina, but Hand denied that he had any sexual contact

---

[2] Hand's property was located ten to fifteen miles away from Kate and Nina's home.

3

with her. He admitted that Kate had told him to stay away from Nina. Hand explained that he thought Nina was twenty years old because she had told him that was her age. Hand did not believe Nina was ten years old because she acted more mature, and he had seen a picture of her developed breasts and did not think they were children's breasts. After Investigator Little showed Hand the search warrant for his phone and left Hand to himself, Hand could be seen fidgeting and saying, "I'm done. I'm done."

¶8.     Investigator Little examined the three cell phones found in Hand's car, finding some evidence on one of them.[3] The phone in question belonged to Hand's son, who had recently passed away. The activity on the phone showed substantial use up until Hand's son's death. Then a period of no use followed until it was reactivated several months later. Photographs containing child pornography were found on the phone, and they were dated as being taken after the phone had been reactivated.

¶9.     Digital forensics examiner Ashley Boldig examined the phone and testified about its contents at trial. Boldig testified that the child pornography was stored in the phone's "camera roll directory." In all, there were nineteen photographs of child pornography. Boldig described the photos as follows:

> (1) "Male penis in the vaginal area of a female."
> (2) "Female with her mouth on a male penis."

---

[3] Two of the three phones found in Hand's car had no evidence of child exploitation. One phone appeared smashed and was unworkable. Nina had apparently found the phone on the ground in a ditch. The other phone was registered to Timothy Edge and contained no child-exploitation material.

(3) "Female's breast exposing the nipple."
(4) "Unknown individual kissing a male."
(5) "Female exposing her breasts and vaginal area of her legs open."
(6) "Female's breast exposing the nipple."
(7) "Female with her mouth on a male penis."
(8) "Female with her mouth on a male penis."
(9) "Female with her mouth on a male penis."
(10) "Female exposing her breasts and vaginal area with her legs open."
(11) "Unknown individual kissing a male."
(12) "Female with her mouth on a male penis."
(13) "Female breast exposing the nipple."
(14) "Female with mouth on male penis."
(15) "Male penis inserted near the vaginal area."
(16) "Female with her mouth on a male penis."
(17) "Female exposing her breasts and vaginal area with her legs open."
(18) "Female exposing her breasts and vaginal area with her legs open."
(19) "Male penis inserted near the vaginal area exposing the vaginal area of the female."

Of the nineteen photographs, nine were created on August 13, 2020; seven were created on September 11, 2020; one was created on September 14, 2020; and two were created on September 20, 2020. Kate identified Hand and Nina in the photographs. Kate testified she identified Nina in the photos by her bone structure, pubic hair, earrings, hair, nose, birthmarks, and breasts. She recognized Hand in the photos by his skin tone and hair. In addition, another photograph taken on September 6, 2020, showed Nina asleep in Hand's car. Nina later admitted to Kate that Hand had "touched" her and taken photographs of her.

¶10. Boldig testified that Hand began using the phone in February 2020 and that Hand was the "primary user" during the time frame that the child pornography was photographed.[4] On

---

[4] Two other individuals had used the phone, but Boldig classified them as "temporary users" since there were only a "handful" of text messages sent by the users, and the time

August 13, 2020—the same day as nine of the child exploitation photos were taken—a picture was taken of Hand's driver's license, social security card, and one of his income statements. Hand had multiple chat conversations and accounts on that phone, as well as a voice recording labeled "Mark Hand" and a photo that appeared to be of Hand taken on October 28, 2020. Boldig also found a photograph of a letter Hand had written to his deceased son on November 5, 2020.

¶11.    Boldig testified that the phone had five contacts saved as "Nina" and several text conversations from different phone numbers and accounts identified as "Nina." Those conversations began in June 2020 and picked up in frequency around August 2020. In one chain of text messages, Hand and Nina discussed getting married, and Hand called Nina "baby girl," saying he loved her. Hand asked Nina's age, and Nina responded she was eleven. Boldig also discovered several text messages addressed to Hand from Nina's family members, including one from Nina's father, stating Nina was ten years old and to stay away from her.

¶12.    Nina testified at trial that Hand contacted her on November 8, 2020, picked her up while her mother was asleep, and took her to his property. Nina knew she did not have permission to go with Hand. Nina identified herself and Hand in the child photographs. She testified that she did not disclose what happened with Hand because she was nervous.

¶13.    Hand's niece Brittany testified in his defense. Brittany testified that Kate often

_____

frames of those conversations were "very short."

6

pushed Nina out of the house and told her to go play. She said Kate and Hand got along, and Kate sent Nina to be with Hand "all the time." Brittany said Nina and several others had access to Hand's phone, though Hand's personal phone was not the one that contained child exploitation. Brittany testified Nina came to her a week before the trial and told her that Hand did not do what he was accused of doing.

¶14. The jury found Hand guilty of kidnapping under Mississippi Code Annotated section 97-3-53 (Rev. 2020) and child exploitation under Mississippi Code Annotated section 97-5-33(5) (Rev. 2020). The trial court sentenced Hand to serve thirty years for the kidnapping and forty years for the child exploitation, running consecutively in the custody of the Mississippi Department of Corrections. In addition, Hand was ordered to register as a sex offender. Hand moved for a new trial which was denied. He timely appealed.

**STANDARD OF REVIEW**

¶15. "In reviewing a weight-of-the-evidence challenge, we must also view the evidence in the light most favorable to the verdict. The court will only disturb a verdict if it is 'so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Burden v. State*, 347 So. 3d 174, 178 (¶15) (Miss. 2022) (quoting *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017)).

**DISCUSSION**

**(1) Kidnapping**

¶16. Hand claims his guilty verdict on the kidnapping count goes against the overwhelming

7

weight of the evidence. Under Mississippi law, kidnapping is defined as when "[a]ny person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any . . . vulnerable person as defined in Section 43-47-5 or any child under the age of sixteen (16) years against the will of the parents or guardian or person having the lawful custody of the child . . . ." Miss. Code Ann. § 97-3-53. At trial, the State argued that Hand inveigled Nina, a minor under age sixteen, against her parents' will. "Inveigling has no component of force, but only of coaxing. One does not forcibly inveigle." *Myers v. State*, 770 So. 2d 542, 544 (¶7) (Miss. Ct. App. 2000). This Court noted that "inveigle" means "to lure or entice through deceit or insincerity." *Young v. State*, 271 So. 3d 650, 658 n.5 (Miss. Ct. App. 2018) (citing *Inveigle*, Black's Law Dictionary 952 (10th ed. 2014)). Hand cites *Young*'s definition of inveigle and argues that there was no evidence that he enticed Nina with deceit or insincerity. We disagree.

¶17. This Court in *Young* affirmed a guilty verdict for kidnapping under similar circumstances as this case. *Id.* at 658 (¶33). In *Young*, the fourteen-year-old victim, "Jane," called Young and asked him to pick her up. *Id.* at 653 (¶4). Young drove Jane to his property, and they had sex. *Id.* at (¶5). Jane's mother contacted Young asking if he had heard from Jane, but Young lied and said he had not seen her. *Id.* at (¶6). In affirming Young's conviction, this Court explained, "We note that there is no evidence that Young inveigled Jane by tricking or deceiving her; Jane testified that she called Young, asked him

8

to pick her up at the Magnolia Motel, and left her house 'on her own.'  But Jane was under the age of sixteen, and the evidence shows that Young's failure to return Jane to her mother's custody was against her mother's will."  *Id.* at 658 (¶32).

¶18.    Like in *Young*, Hand took Nina from her home against Kate's will.  Hand admitted that he knew he did not have permission to see Nina.  He kept Nina on his property without Kate's knowledge and did not return Nina until the police found them together and picked her up.  Viewing the evidence in the light most favorable to the verdict, we find the verdict is supported by the evidence, and allowing it to stand does not constitute an unconscionable injustice.

### (2)    Child Exploitation

¶19.    Hand claims his guilty verdict on the child exploitation count goes against the overwhelming weight of the evidence because the evidence does not show that he *knowingly* possessed child pornography.  Hand was found guilty of violating section 97-5-33(5), which states that "[n]o person shall, by any means including computer, knowingly possess or knowingly access with intent to view any photograph, drawing, sketch, film, video tape or other visual depiction of an actual child engaging in sexually explicit conduct."

¶20.    Hand argues that the child pornography was not in the phone's camera roll but had been deleted and only found in a "roll cast" directory.  However, deleted photos can still support a conviction for possessing child pornography. *See Travelstead v. State*, 232 So. 3d 752, 755 (¶4) (Miss. Ct. App. 2017).  In addition, Kate and Nina identified Nina in the

photos, and Nina testified Hand took those photos of her.

¶21.    Hand argues that other people had access and used the phone.  Forensic examiner Boldig testified that Hand was the primary user of the phone during the time that the photos were taken.  Other photos on the phone, such as the ones with Hand's social security card and the photo of Hand's written note to his deceased son, are strong evidence to support Hand being the primary user.

¶22.    Hand points out that Brittany testified Nina claimed Hand was innocent.  However, Nina herself testified differently at trial.  It is the jury's job to weigh the credibility of the witnesses.  *See Johnson v. State*, 276 So. 3d 1195, 1200 (¶22) (Miss. Ct. App. 2018).  As previously stated, our review looks at the evidence in the light most favorable to the verdict.  The evidence supports the jury's verdict.

## CONCLUSION

¶23.    Hand's verdicts are both supported by the evidence, and allowing them to stand would not sanction an unconscionable injustice.  Therefore, we affirm his convictions and sentences.

¶24.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**